STATE of Missouri, Respondent,

v.

Charles L. CROSS, Appellant.

No. 61799.

Supreme Court of Missouri,
En Banc.

Feb. 11, 1980.

Robert C. Babione, Public Defender, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Kathryn Marie Krause, Asst. Atty. Gen., Jefferson City, for respondent.

SEILER, Judge.

Defendant's appeal from his conviction by jury of second degree murder and a forty year sentence went first to the Court of Appeals, Eastern District, which transferred the case here for reexamination of existing law on whether the trial court was required to give an instruction on diminish-

ed mental capacity. We do not reach that question, however, because the case has to be reversed and remanded on another ground and when tried again the court will have the benefit of MAI–CR instructions and Notes on Use on the subject which were not available when the case was first tried.

In view of the disposition which we make of the case, there is no need to go into the facts of the crime other than briefly. The charge against defendant grows out of the stabbing of one Dorothy Sutherland in St. Louis. Defendant did not deny stabbing Mrs. Sutherland; he simply did not remember doing it and it was virtually conceded by the defense that defendant had killed her. The defense was mental disease or defect precluding responsibility on the one hand, or, on the other, a combination of psychiatric, psychological and pathological circumstances rendering him incapable of forming the necessary mental state of premeditation required of second degree murder.

After MAI–CR 2.01 and 2.02 were properly read to the jury, the trial court, over the objection of the defendant, undertook to explain the instructions. These oral remarks extend through ten pages of the transcript and run over three thousand words. Portions dealt with matters of practical concern to the jury—the need for and procedure of jury sequestration, details about meals and lodging, hours of court, which seats to take in the jury box, and how to send an emergency message. Other portions related to when jeopardy attaches, the duty of the court as to the law and review by appellate courts of his rulings, the duty of the jury as to determination of the facts, the burden of proof, somewhat contradictorily saying first that each side "puts on evidence to prove their points of view" and then a few lines later that "there is no burden on the defendant to offer testimony," the use of the transcript of testimony by the appellate courts, but its unavailability to the jurors, and the prohibition against jurors having the testimony of particular witnesses read back to them or their taking written notes.

The court's desire to inform the jurors of the routine they would be required to follow, particularly where they were to be sequestered in a trial which would last several days, is commendable and understandable, but the impromptu or extemporaneous remarks, comments and instructions delivered in this case went much further and are not acceptable. Instructions MAI–CR 1.02, 1.06, 2.01 and 2.02 had already been read. These, of course, are in writing and MAI–CR 1.06, 2.01 and 2.02 go to the jury room with the jurors. MAI–CR 1.06 prescribes the order of trial. MAI–CR 2.01 sets forth the duties of judge and jury. MAI–CR 2.02 relates to evidence and rulings of the court. They have no place for departures such as took place in the present case.

The delivering, as here, of lengthy oral explanations, talks, comments, chats, homilies or whatever they may be called, invites confusion and disagreement later among the jurors as to exactly what the judge did say and whether his oral remarks prevail over the written instructions or vice versa. No one can tell what the effect will be of bringing the matter of review by appellate courts to the attention of the jury, nor what the effect would be of telling the jury that the way the case is tried is that each side puts on evidence to prove their facts, but that the defendant is under no burden to put on any evidence. Trial courts should abide by MAI–CR 1.02, 1.06, 2.01 and 2.02, in starting jury trials. Perhaps there are circumstances where minor deviations from the prescribed course would be justified. If so, we make no attempt at delineation here, except to say the present example is not one which can be approved.

Reversed and remanded.

BARDGETT, C. J., DONNELLY, MORGAN and HIGGINS, JJ., and STOCKARD, Special Justice, concur.

RENDLEN, J., concurs in result.

WELLIVER, J., not sitting.